## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## OWENSBORO DIVISION
## CIVIL ACTION NO. 4:20-CV-00097-HBB

**JONATHAN ABRAMS**                                                                 **PLAINTIFF**

**VS.**

**ANDREW SAUL, COMMISSIONER**
**SOCIAL SECURITY ADMINISTRATION**                                     **DEFENDANT**

## MEMORANDUM OPINION
## AND ORDER

### BACKGROUND

Before the Court is the complaint (DN 1) of Jonathan Abrams ("Plaintiff") seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g). Both Plaintiff (DN 16) and Defendant (DN 21) have filed a Fact and Law Summary. For the reasons that follow, the final decision of the Commissioner is **AFFIRMED**, and judgment is **GRANTED** for the Commissioner.

Pursuant to 28 U.S.C. § 636(c) and FED. R. CIV. P. 73, the parties have consented to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed (DN 14). By Order entered November 18, 2020 (DN 15), the parties were notified that oral arguments would not be held unless a written request therefor was filed and granted. No such request was filed.

<u>FINDINGS OF FACT</u>

Plaintiff protectively filed an application for Disability Insurance Benefits and Supplemental Security Income on January 11, 2017 (Tr. 16, 191-92, 195-201). Plaintiff alleges to have become disabled on July 15, 2015, as a result of bipolar schizoid effective disorder and back pain (Tr. 15, 60-61, 67-68, 74-75, 88-89, 217). These claims were initially denied on February 28, 2017,[1] and the claims were again denied upon reconsideration on July 6, 2017 (Tr. 16, 66, 73, 86, 100). At that point, Plaintiff requested a hearing before an administrative law judge (Tr. 128-29). Administrative Law Judge Stacy L. Foster ("ALJ") conducted a video hearing from Paducah, Kentucky on October 9, 2018 (Tr. 16, 38). Virtually present at the hearing from Owensboro, Kentucky was Plaintiff and his attorney Sara J. Martin Diaz (<u>Id.</u>). During the hearing, Tina Stambaugh, M.S., testified as a vocational expert (Tr. 16, 38, 52-56).

In a decision dated March 19, 2019, the ALJ evaluated this adult disability claim pursuant to the five-step sequential evaluation process promulgated by the Commissioner (Tr. 16-30). At the first step, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date (Tr. 18). At the second step, the ALJ determined Plaintiff has the following severe impairments: degenerative disc disease of the lumbar spine, schizoaffective disorder, anxiety disorders, and post-traumatic stress disorder (PTSD) (<u>Id.</u>). At the third step, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in Appendix 1 (Tr. 19).

---

1     The ALJ's opinion stated that both claims were denied upon initial review on March 1, 2017 (Tr. 16). Both initial determination documents contain the signature of the Disability Adjudicator/Examiner and the date certifying the determination (Tr. 66, 73). Both documents note the date of the "Not Disabled" opinion was rendered on February 28, 2017 (<u>Id.</u>). As such, the undersigned will use the February 28, 2017 date.

At the fourth step, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b) except for the following limitations: Plaintiff should never climb ladders, ropes, or scaffolds; occasionally stoop, kneel, crouch, crawl, and climb ramps and stairs; needs to avoid concentrated exposure to vibration and hazards; can understand, remember, and carry out simple instruction, which can be learned in a 30-day period; can maintain concentration, persistence, and pace for simple tasks requiring little independent judgment and minimal variation; can interact occasionally with supervisors and coworkers; needs to avoid interactions with the public; and Plaintiff is limited to a routine work setting (Tr. 20). The ALJ found Plaintiff is unable to perform any past relevant work (Tr. 28).

After this finding, at the fifth step, the ALJ considered Plaintiff's RFC, age, and education,[2] as well as testimony from the vocational expert, to find that Plaintiff is able to perform other jobs that exist in the national economy (Tr. 28-29). However, Plaintiff's age and age category changed on March 12, 2019, and, as a result of the change, no jobs exist in significant numbers in the national economy that Plaintiff could perform (Tr. 30). Therefore, the ALJ concluded that Plaintiff has not been under a "disability," as defined in the Social Security Act, prior to March 12, 2019, but Plaintiff became disabled on that date and the disability continued thereon (Id.).

Plaintiff timely filed a request for the Appeals Council to review the ALJ's decision (Tr. 189). The Appeals Council denied Plaintiff's request for review (Tr. 1-3).

---

2   The ALJ stated that "transferability of job skills [was] not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled' whether or not the claimant has transferable job skills" (Tr. 28). Further, "Beginning on March 12, 2019, the claimant has not been able to transfer job skills to other occupations" (Id.).

## CONCLUSIONS OF LAW

### Standard of Review

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. § 405(g); Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993); Wyatt v. Sec'y of Health & Human Servs., 974 F.2d 680, 683 (6th Cir. 1992), and whether the correct legal standards were applied. Landsaw v. Sec'y of Health & Human Servs., 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." Cotton, 2 F.3d at 695 (quoting Casey v. Sec'y of Health & Human Servs., 987 F.2d 1230, 1233 (6th Cir. 1993)). In reviewing a case for substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." Cohen v. Sec'y of Health & Human Servs., 964 F.2d 524, 528 (6th Cir. 1992) (quoting Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984)).

As previously mentioned, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-3). At that point, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); *see* 42 U.S.C. § 405(h) (finality of the Commissioner's decision). Thus, the Court will be reviewing the decision of the ALJ, not the Appeals Council, and the evidence that was in the administrative record when the ALJ rendered the decision. 42 U.S.C. § 405(g); 20 C.F.R. § 404.981; Cline v. Comm'r of Soc. Sec., 96 F.3d 146, 148 (6th Cir. 1996); Cotton v. Sullivan, 2 F.3d 692, 695-696 (6th Cir. 1993).

The Commissioner's Sequential Evaluation Process

The Social Security Act authorizes payment of Disability Insurance Benefits and Supplemental Security Income to persons with disabilities. 42 U.S.C. §§ 401 et seq. (Title II Disability Insurance Benefits), 1381 et seq. (Title XVI Supplemental Security Income). The term "disability" is defined as an

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months.

42 U.S.C. §§ 423(d)(1)(A) (Title II), 1382c(a)(3)(A) (Title XVI); 20 C.F.R. §§ 404.1505(a), 416.905(a); Barnhart v. Walton, 535 U.S. 212, 214 (2002); Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating a disability claim. *See* "Evaluation of disability in general," 20 C.F.R. §§ 404.1520, 416.920. In summary, the evaluation proceeds as follows:

1) Is the claimant engaged in substantial gainful activity?

2) Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her ability to do basic work activities?

3) Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within Appendix 1?

4) Does the claimant have the residual functional capacity to return to his or her past relevant work?

5) Does the claimant's residual functional capacity, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy?

Here, the ALJ partially denied Plaintiff's claims at the fifth step (Tr. 30).

Challenge to the ALJ's Step Three Analysis

1.  Arguments of the Parties

Plaintiff argues that the ALJ "clearly erred by finding that [Plaintiff's] impairments did not meet the criteria" for Listings 12.03 and 12.04 (DN 16-1 PageID 607).   Plaintiff contends that the ALJ "concluded, without substantial evidence to support such a conclusion," that Plaintiff did not meet Listing 12.04, and the ALJ failed to even address whether Plaintiff met Listing 12.03 (Id. at PageID 607-08).   When looking to the requirements of Listing 12.03 and 12.04, Plaintiff asserts that he satisfied the criteria for paragraphs A, B, and C (Id. at PageID 609-21).

For paragraph A of Listing 12.03, Plaintiff contends that he meets all three criteria: delusions or hallucinations, disorganized thinking (speech), and grossly disorganized behavior or catatonia (Id. at PageID 609) (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.03).   As for Listing 12.04, Plaintiff asserts that he documents at least four characteristics of a bipolar disorder and at least seven characteristics of depression (Id. at 609-10).

Plaintiff contends that he clearly meets the criteria required for paragraph B of Listings 12.03 and 12.04 (Id. at PageID 610-15).   Plaintiff asserts that he has a marked restriction in his ability to interact with others and in his ability to concentrate, persist, or maintain pace, in addition to an extreme limitation in his ability to adapt or manage himself (Id. at PageID 611).   When the ALJ only found moderate limitations in each of these mental functioning areas, this was clear error and not supported by substantial evidence (Id. at PageID 611-14).   Furthermore, Plaintiff claims that "the ALJ, erroneously suggested that [Plaintiff]'s periods of missed medications were the cause of his symptomology and his noncompliance should somehow preclude a disability finding (Id. at PageID 614).

Finally, as for paragraph C, Plaintiff claims "[t]he ALJ clearly erred in failing to find that [Plaintiff] satisfied the paragraph C criteria because the ALJ provided absolutely no discussion on the matter with regard to Listing 12.03" and the ALJ's "conclusory statement" for Listing 12.04 was insufficient (Id. at PageID 617). Plaintiff asserts there is ample medical documentation in the record which supports the paragraph C requirements of duration, ongoing medical treatment which diminishes symptoms and signs, and marginal adjustment (Id. at PageID 617-21).

In contrast, Defendant claims, "The ALJ's decision included an extensive discussion of the medical evidence concerning Plaintiff's impairments, and indicates that the ALJ expressly considered the applicability of Listings under 12.04 . . ." (DN 21 PageID 650). While the ALJ may not have discussed Listing 12.04 as thoughly as possible, Defendant asserts that the ALJ conducted an "extensive discussion of the 'B' and 'C' criteria that are identical to those in that Listing" (Id.). Further, "[a]n ALJ is not required to address every listing in his or her findings" and "[a]n ALJ's step three finding can be implicit" (Id. at PageID 651) (citing Sheeks v. Comm'r of Soc. Sec., 544 Fed. App'x 639, 641 (6th Cir. 2013)).

Turning to the paragraph B criteria, Defendant explained that the ALJ did not find at least two marked limitations or one extreme limitation, which corresponds with the state reviewing psychologists, and such a finding (or lack thereof) did not satisfy Listings 12.04, 12.06, or 12.15 (Id. at PageID 652-53). While Plaintiff may argue otherwise, Defendant rests upon the ALJ's analysis and the evidence utilized to support the lack of marked or extreme limitations, such as Plaintiff's "good relations with others[,]" his ability to participate in door-to-door faith-based activities, his familial and religious relationships, and Plaintiff's interactions with his treating medical sources (Id. at PageID 653-54).

Finally, with paragraph C, Defendant conceded that "the ALJ did not go into specific explanations in this section," but the ALJ "did give some weight to the state reviewing psychological consultants' opinions, and they opined that Plaintiff did not satisfy any of the Listing criteria for 12.04" (Id.at PageID 654).   Additionally, "Plaintiff has the burden of demonstrating that he satisfied all of the Listing criteria, and here, he has not done so" (Id. at PageID 655).   When reviewing the ALJ's determination as a whole, Defendant contents that the analysis contained throughout the decision "reflects why the ALJ found the 'C' criteria [was] not satisfied, especially with respect to marginal adjustment, or minimal capacity to adapt to changes in the environment or to demands that are not already part of one's daily life" (Id.).   Thus, "[t]he ALJ provided sufficient articulation about her step three finding" (Id.).

   2.   Discussion

   The Court will begin with Plaintiff's use of the "clear error" standard in his argument (see DN 16-1 PageID 607-21).   The "clear error" standard applies when a district judge reviews a magistrate judge's report and recommendation to which no timely objection has been filed.   See FED. R. CIV. P. 72 Advisory Committee Note Subdivision (b) ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."); Mitchum v. Saul, No. 2:19-CV-02533-JPM-dkv, 2020 WL 1493482, at *1 (W.D. Tenn. March 27, 2020); Samona v. Comm'r of Soc. Sec., No. 15-CV-11713, 2018 WL 2159893, at *1 (E.D. Mich. May 10, 2018).   The "clear error" standard also applies when a party moves a district court to alter or amend its judgment under FED. R. CIV. P. 59(e). See Moore v Berryhill, No. 4:17-CV-00091-HBB, 2018 WL 2197974, at *1 (W.D. Ky. May 14, 2018).   Neither situation exists here.   Instead, Plaintiff is utilizing the "clear error" standard in

his challenge of the final decision of the Commissioner (DN 1). But the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence" and whether the correct legal standards were applied. *See* 42 U.S.C. § 405(g); Gayheart v. Comm'r of Soc. Sec., 710 F.3d 365, 374 (6th Cir. 2013); Cole v. Astrue, 661 F.3d 931, 937 (6th Cir. 2011)). Thus, the Court declines Plaintiff's invitation to apply the "clear error" standard.

Next, at the third step, a claimant will be found disabled if his impairment meets or medically equals one of the listings in the Listing of Impairments. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(d), 416.925(a); Turner v. Comm'r of Soc. Sec., 381 Fed. App'x 488, 491 (6th Cir. 2010). The Listing of Impairments, set forth in Appendix 1 to Subpart P of the regulations, describes impairments the Social Security Administration considers to be "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. §§ 404.1525(a), 416.925(a); *see also* 20 C.F.R. §§ 404.1520(d), 416.920(d) ("If you have an impairment(s) which meets the duration requirement and is listed in appendix 1 or is equal to a listed impairment(s), we will find you disabled without considering your age, education, and work experience.").

Each listing specifies "the objective medical and other findings needed to satisfy the criteria of that listing." 20 C.F.R. §§ 404.1525(c)(3), 416.925(c)(3). An Administrative Law Judge will find that an impairment "*meets* the requirements of a listing when it satisfies all the criteria of that listing." 20 C.F.R. §§ 404.1525(c)(3), 416.925(c)(3) (emphasis in original); Hale v. Sec'y of Health & Human Servs., 816 F.2d 1078, 1083 (6th Cir. 1984). When this occurs, the claimant will be considered disabled. Id.

However, a claimant is also deemed disabled if her impairment is the medical equivalent of a listing. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(d), 416.926; Turner, 381 Fed. App'x at 491.[3] Medical equivalence means "at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. §§ 404.1526(a), 416.926(a). "An administrative law judge must compare the medical evidence with the requirements for listed impairments in considering whether the condition is equivalent in severity to the medical findings for any Listed Impairment." Reynolds v. Comm'r Soc. Sec., 424 Fed. App'x 411, 415 (6th Cir. 2011). Additionally, the administrative law judge looks to the opinions of the state agency medical advisors and/or the opinion of a testifying medical expert for guidance on the issue of whether the impairment is the medical equivalent of a listing. See 20 C.F.R. §§ 404.1526(c) and (d), 416.926(c) and (d); Social Security Ruling 17-2p, 2017 WL 3928306, at *3-4 (March 27, 2017); Deters v. Sec'y of Health, Educ. & Welfare, 789 F.2d 1181, 1186 (5th Cir. 1986).

The severity requirements for Listings 12.03 and 12.04 are set forth in paragraphs "A", "B", and "C" of the listing. 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00(A). The paragraph "B" criteria are: "1. *Understand, remember, or apply information (paragraph B1)*"; "2. *Interact with others (paragraph B2)*"; "3. *Concentrate, persist, or maintain pace (paragraph B3)*"; and "4. *Adapt or manage oneself (paragraph B4)*". Id. 12.00(E)(1)-(4). These four areas of mental functioning are evaluated on the following five-point rating scale:

> a. *No limitation (or none)*. You are able to function in this area independently, appropriately, effectively, and on a sustained basis.

---

3   An Administrative Law Judge will find that an impairment is "medically equivalent to a listed impairment . . . if it is at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. §§ 404.1526(a), 416.926(a).

b. *Mild limitation*. Your functioning in this area independently, appropriately, effectively, and on a sustained basis is slightly limited.

c. *Moderate limitation*. Your functioning in this area independently, appropriately, effectively, and on a sustained basis is fair.

d. *Marked limitation*. Your functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited.

e. *Extreme limitation*. You are not able to function in this area independently, appropriately, effectively, and on a sustained basis.

Id. 12.00(F)(2)(a)-(e).

To satisfy the paragraph "A" criteria of Listing 12.03, Plaintiff must provide medical documentation of one or more of the following: delusions or hallucinations, disorganized thinking (speech), or grossly disorganized behavior or catatonia. Id. 12.03(A). For Listing 12.04, the paragraph "A" criteria requires medical documentation of either depressive disorder characterized by five or more symptoms[4] or bipolar disorder shown by three or more symptoms.[5] Id. 12.04(A).

---

4 Paragraph "A" of Listing 12.04 goes on to create a comprehensive catalog of symptoms with which a claimant may show depressive disorder:

    a. Depressed mood;
    b. Diminished interest in almost all activities;
    c. Appetite disturbance with change in weight;
    d. Sleep disturbance;
    e. Observable psychomotor agitation or retardation;
    f. Decreased energy;
    g. Feelings of guilt or worthlessness;
    h. Difficulty concentrating or thinking; or
    i. Thoughts of death or suicide.

20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.03(A)(1).

5 Like depressive disorder, paragraph "A" of Listing 12.04 creates another index of symptoms with which a claimant may show bipolar disorder:

    a. Pressured speech;

To satisfy the paragraph "B" criteria for Listings 12.03 and 12.04, a claimant's mental disorder must result in extreme limitation of one, or marked limitation of two, paragraph B areas of mental functioning.  Id. 12.03(B), 12.04(B).  As for paragraph "C", both Listings 12.03 and 12.04 require Plaintiff's condition to be "serious and persistent", with a medically documented history over two years, and evidence of ongoing treatment and marginal adjustment.  Id. 12.03(C), 12.04(C).  To meet Listings 12.03 and 12.04, paragraphs "A" and "B" or "A" and "C" must both be satisfied.  Id. 12.03, 12.04.

In the opinion, the ALJ considered the paragraph "B" criteria for Listing 12.04 but did not find the two marked limitations, or one extreme limitation, required to satisfy the Listing (Tr. 19). Specifically, the ALJ found a moderate limitation in understanding, remembering, or applying information, a moderate limitation in interacting with others, a moderate limitation in concentrating, persisting, and maintaining pace, and a moderate limitation in adapting or managing oneself (Tr. 19-20).  While the ALJ noted Plaintiff's limitations in each of these areas, the ALJ also discussed Plaintiff's "intact cognition and memory[,]" Plaintiff's ability "to go to doctor appointments as scheduled and take medication as prescribed," Plaintiff's ability to "maintain[] relations with others and go[] door-to-door performing faith-based activities[,]" Plaintiff's ability "to drive, watch television, read, do drafting, and attend church activities[,]" and Plaintiff being

---

b. Flight of ideas;
c. Inflated self-esteem;
d. Decreased need for sleep;
e. Distractibility;
f. Involvement in activities that have a high probability of painful consequences that are not recognized; or
g. Increase in goal-directed activity or psychomotor agitation.

20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.03(A)(2).

"independent in self-care and is able to stay at home without a caregiver while his wife works" (Id.). Even then, the ALJ discussed how Plaintiff's cooperation and engagement with treating sources may degrade when Plaintiff has flare-ups related to noncompliance with medication, and the ALJ discussed how the RFC determination was modified to reduce stress resulting from public interactions (Id.). When the ALJ looked to whether Plaintiff satisfied the paragraph "C" criteria, the ALJ merely noted that "[t]he evidence in this case does not establish the presence of the paragraph 'C' criteria" (Tr. 20).

In the present case, the ALJ extensively discussed Listings 12.04, 12.06, and 12.15, including the requirements for the paragraph "B" criteria, what the limitation was present for each of the criteria, and what evidence prevented further limitations in each criterion (Tr. 19-20). While Plaintiff correctly asserts that the ALJ did not directly mentioned Listing 12.03 (DN 16-1 PageID 608), Plaintiff and Defendant both correctly note that the paragraph "B" and "C" criteria are identical between Listings 12.03 and 12.04 (Id. at PageID 610; DN 21 PageID 650).

However, "neither the listings nor the Sixth Circuit require the ALJ to 'address every listing' or 'to discuss listings that the applicant clearly does not meet.'" Smith-Johnson v. Comm'r of Soc. Sec., 579 Fed. Appx. 426, 432 (6th Cir. 2014) (quoting Sheeks v. Comm'r of Soc. Sec., 544 Fed. Appx. 639, 641 (6th Cir. 2013)); see also Kornecky v. Comm'r of Soc. Sec., 167 Fed. Appx 496, 507-08 (6th Cir. 2006) ("While it might be ideal for an ALJ to articulate his reasons for crediting or discrediting each medical opinion, it is well settled that[] 'an ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.'") (quoting Loral Defense Sys.-Akron v. NLRB, 200 F.3d 436, 453 (6th Cir. 1999)). Further, "[e]ven if the ALJ should have explicitly mentioned the listings in her decision, the failure

13

to do so was harmless because the ALJ considered evidence relevant to a listing determination throughout her decision." Pitcock v. Saul, No. 1:18-CV-00166-HBB, 2019 U.S. Dist. LEXIS 205274, at *14 (W.D. Ky. Nov. 25, 2019) (citing Willis v. Colvin, 4:15-CV-00089-HBB, 2016 U.S. Dist. LEXIS (W.D. Ky. May 26, 2016)).

To support his argument about paragraph "A", Plaintiff points to medical records detailing distractibility, a history of conflict, self-isolation, diminished sleep, and suicidal and homicidal ideations (DN 16-1 PageID 610). On November 15, 2017, Plaintiff did mention auditory hallucinations, panic attacks, and a one-time homicidal ideation "when watching YouTube" but the ideation dissipated (Tr. 417). Other than those self-reports, Plaintiff's affect, participation, quality of participation, thought processes, and speech were appropriate, and Plaintiff's insight was good (Id.). Looking to the other documentation in the record, it does note some instances with idealizations, but largely show appropriate mood, affect, participation, thought processes, speech, perceptions, and reported behavior is appropriate.

The day prior to the claim of homicidal ideation, Plaintiff was alert, his psychomotor was within normal limits, his mood was neutral, and he had no anxiety, paranoia, suicidal or homicidal ideations (Tr. 416). Two weeks earlier, on November 1, Plaintiff was noted to be alert, his psychomotor was within normal limits, but he was rambling, paranoid, and anxious (Tr. 413). Prior to those visits, on April 13, 2017, Plaintiff's mood, affect, participation, quality of participation, thought processes, speech, and sleep, including no suicidal or homicidal ideations, no self-injurious behaviors, good insight, and appropriate reported behaviors (Tr. 398). On July 13 of the same year, Plaintiff reported depressive mood, but had appropriate affect, participation,

quality of participation, through processes, speech, perceptions, and sleep, as well as no suicidal or homicidal ideations, self-injurious behavior, and good insight (Tr. 410).

After these events, Plaintiff saw Darlene Jordan at RiverValley Behavioral Health on January 3, 2018 (Tr. 477). Plaintiff's mood, affect, participation, quality of participation, thought processes, speech, perceptions, sleep, and reported behavior were all appropriate, with the documentation explicitly noting Plaintiff denying any hallucinations, no suicidal or homicidal ideations, and no self-injurious behavior (Id.). Next, on January 30 and February 19, 2018, Plaintiff visited Bridgewater Medical Center on a follow-up for back pain (Tr. 468-70, 470-73). In both of these visits, the Psych/Mental Status review stated Plaintiff was negative for anxiety, depression, memory problems, and mood swings (Tr. 469, 472). However, on February 27, 2018, Plaintiff reported auditory and possible visual hallucinations which were seeking self-injurious behavior and suicidal ideations (Tr. 476). Plaintiff had not engaged in self-injurious behavior, but the other reporting areas (mood, affect, participation, etc.) were blank (Id.).

Subsequently, Plaintiff returned to RiverValley Behavioral Health on March 3, 2018, where he was "relaxed," his affect, participation, quality of participation, thought processes, speech, and reported behavior was appropriate (Tr. 475). He had no self-injurious behavior or homicidal or suicidal ideations, but he did mention recent auditory hallucinations (Id.). These hallucinations were sometimes vulgar, intelligible, or were seeking self-injurious behavior (Id.). The documentation also mentioned that the auditory hallucinations wanted Plaintiff to harm others, but those types of hallucinations were "long ago" (Id.). Plaintiff had another appointment at RiverValley on March 23, 2018, and the documentation notes his mood was "euphoric," his affect, participation, quality of participation, thought processes, speech, perceptions, sleep, and reported

behavior was appropriate, while having good insight and no homicidal or suicidal ideations (Tr. 474). On May 8, 2018, Plaintiff visited Dr. Harrison at Owensboro Health, where Plaintiff reported good sleep and appetite, and he was doing "fairly well" (Tr. 486). Upon examination, Plaintiff's thought process was normal, his mood was euthymic, his affect was in good range, he did not have any suicidal or homicidal ideations, his insight and judgment were fair, and his posture and motor behavior was appropriate (Id.).

Jumping ahead by eleven months, Plaintiff visited Owensboro Health on April 10, 2019, where he stated that he had been at the Crisis and Stabilization Unit two weeks prior, but he was then denying delusional thinking, noted periodic but temporary auditory hallucinations, rare "thoughts of harming others but would not act on them[,]" and depressive episodes which are exacerbated by noncompliance with medication (Tr. 458-49).

As previously noted, to meet Listings 12.03 and 12.04, paragraphs "A" and "B" or "A" and "C" must both be satisfied. 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.03, 12.04. Thus, looking at all the medical documentation above, and the remaining documentation in the record, the evidence shows that paragraph "A" of Listings 12.03 is satisfied, specifically 12.03(A)(1) (Delusions or hallucinations). With the ALJ's analysis of Listing 12.04 immediately beginning with the paragraph "B" criteria for Listing 12.04, it is implied that the ALJ found paragraph "A" to be satisfied, and that determination is supported by substantial evidence.

Turning to the paragraph "B" criteria, Plaintiff cites two "Mental Residual Functional Capacity Questionna[ir]e" forms completed by Dr. Joseph Harrison, M.D., and Stephanie M. Decker, LCSW [Licensed Clinical Social Worker], on August 28, 2018 and September 5, 2018, respectively (Tr. 523-26). In the first questionnaire, Dr. Harrison noting mild limitations in

restriction of activities of daily living, marked limitations for difficulties in maintaining social functioning, marked limitation regarding difficulties in maintaining concentration, persistence, or pace, and four or more episodes of decompensation with each being of an extended duration (Tr. 524). Ms. Decker checked the boxes for a moderate limitation in restriction of activities of daily living, marked limitation in difficulties in maintaining social function, marked limitation regarding difficulties in maintaining concentration, persistence, or pace, and four or more episodes of decompensation with each being of an extended duration (Tr. 526). If the ALJ had utilized these reports, as Plaintiff suggests the ALJ should have, then Plaintiff would have met the paragraph "B" criteria.

In contrast, as Defendant notes, the state agency reviewing psychologists reviewed the medical documentation, and the state psychologists' opinions would not support Plaintiff meeting Listing 12.03 or 12.04 (Tr. 64, 70-71, 78-79, 92-93). Dr. Sillers, the non-reviewing consultant from the DIB and SSI initial determination, found that "[t]here [was] insufficient evidence to substantiate the presence of the disorder" to meet the paragraph "A" criteria of Listing 12.03 and that "[a] medically determinable impairment is present that does not precisely satisfy" the paragraph "A" criteria of Listing 12.04 (Tr. 64, 71). Further, Dr. Sillers noted "insufficient evidence to accurately assess the severity [of Plaintiff]'s mental impairments[,]" let alone establish any limitations for the paragraph "B" or "C" criteria of Listing 12.04 (Id.). Given that there was virtually no viable information present in these determinations, the ALJ awarded no weight to them (Tr. 26-27). Upon reconsideration of the applications, Dr. Brake found that there was a "medically determinable impairment" present, but the impairment(s) did not "precisely satisfy the diagnostic criteria" of paragraph "A" for Listings 12.04, 12.06, and 12.15 (Tr. 78, 92). As for the

paragraph "B" criteria, Dr. Brake found a mild limitation in understanding, remembering, or applying information, a moderate limitation in interacting with others, a moderate limitation in concentration, persistence, or maintaining pace, and a mild limitation in adapting or managing oneself (Tr. 78-79, 92-93). Finally, Dr. Brake found that the "[e]vidence [did] not establish the presence of the 'C Criteria'" (Tr. 79, 93). The ALJ was "persuaded to give some weight to the reconsideration determination" (Tr. 27).

Plaintiff argues it was speculative to include his faith-based activities and his interactions with medical staff (DN 16-1 PageID 611-14). Ms. Decker noted that stress at work exacerbates Plaintiff symptoms, and this has made him prone to anger outbursts in previous work settings (Tr. 525). However, the record is absent any showings of work issues, and Plaintiff's testimony at the hearing before the ALJ mentions a generalized issue "getting along with other people" and his prior construction employment terminating due to a psychotic break (Tr. 47-48). Plaintiff's employer in North Carolina did not approve of Plaintiff seeking help for his mental health (Tr. 492). However, at the hearing, Plaintiff conceded that treatment was helping (Tr. 50).

Medical records show Plaintiff had some issues with rambling and stuttering during interviews, and his application stated that he stopped working because of his impairments (Tr. 214, 217). However, the documentation contains information from Plaintiff where he states that he enjoys his door-to-door religious work even if it gives him some anxiety, has supervised up to four people at work, has fifteen close friends, and in 2016, noted that he felt comfortable in social situations (Tr. 225, 376, 492, 501). Plaintiff would have "family dinners about 2 times per month" and would "go to religious services 2 times per week" (Tr. 237; 244). Additionally, the records show numerous occasions where Plaintiff was pleasant and interactive (Tr. 388, 389, 390,

393, 394, 398, 402, 404, 459, 474, 475, 477, 478, 486, 489, 495, 506). These interactions show an ability to interact with others to support the ALJ's limitation by substantial evidence.

As for Plaintiff's ability to adapting and manage himself, in addition to his ability to concentrate, persist, and maintain pace, Plaintiff is able to dress himself, feed himself and his son, care for his pet cats, drive his son to school, draw, play cards and solitaire, watch tv, pick up his son from school, sometimes makes dinner for his family (even if he does occasionally mix up ingredients or burn the meal), and he can go shopping in stores (Tr. 233-34, 236-37). Plaintiff is able to do this all independently while his spouse is working (Tr. 20, 51-52). The ALJ acknowledged "an anxious mood at time and some temper control issues" but qualified the statement by noting that the emotions were "attenuated with medication compliance" (Tr. 20).

Looking to the last paragraph "B" criteria—understanding, remembering, or applying information, the ALJ noted "intact cognition and memory," as well as many of the same activities discussed in the paragraph above (Tr. 19; *see also* Tr. 233-34, 36-37). However, the ALJ did note that Plaintiff is able to take his medication independently, but there have been "some noncompliance issues" (Tr. 19; *see also e.g.* Tr. 235, 458-59, 486, 495, 505-06). Even then, the ALJ's opinion reaches ahead when describing the effects of Plaintiff's limitations by noting how Plaintiff's RFC will be impacted as a result of the "combined effects of his impairments" (Tr. 19). The record is also replete with instances where Plaintiff was understanding and learning from past visits, remembering when and how often he takes his medication, answering questions from medical staff, and applying the discussions at RiverValley to create a "crisis plan" and coping strategies (Tr. 386, 388, 402, 404, 417, 458-59, 474, 476, 477, 486, 500-01).

Thus, when looking at all the information above, the evidence shows that the ALJ's determination that Plaintiff does not meet the paragraph "B" criteria of Listings 12.03 and 12.04 is supported by substantial evidence.

Finally, when looking at the paragraph "C" criteria, the ALJ simply found that "[t]he evidence in this case does not establish the presence of the paragraph 'C' criteria" (Tr. 20). To satisfy paragraph "C" of both Listings, Plaintiff must show that his mental disorder is "serious and persistent" by presenting documentation that his disorder has existed for more than two years, medical treatment or mental health therapy "is ongoing and that diminishes the symptoms and signs" of the disorder, and Plaintiff has minimal capacity to adapt to change in the environment or to demands that are not already in his daily life. 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00(G), 12.03(C), 12.04(C).

Looking at the medical documentation, Plaintiff was noted to have schizoaffective disorder on August 2, 2010, while Plaintiff's most recent medical visits, such as August 7, 2018, still support that diagnosis (Tr. 341, 505-08). Thus, the two-year requirement is met. Next, Plaintiff has stated that he received treatment "prior to 213, moved to Kentucky with a gap in treatment, and began regular medical treatment in 2015 and remained in consistent treatment with a psychiatrist, social worker, therapists, and daily medications" (DN 16-1 PageID 617). Further, "[f]rom December 10, 2015 through February 27, 2018, [Plaintiff] was routinely seen at River Valley for prescription and psychiatric management, overseen by Dr. David Harmon" (Id. at PageID 617-18) (citing Tr. 378-417, 474-83). Subsequently, Plaintiff "began seeing Dr. Harrison on April 10, 2018[,]" and they have since met "bi-monthly for psychiatric treatment and medication management" (Id. at PageID 618) (citing Tr. 458-59, 523). These assertions are

uncontroverted and are established by the record. The record also shows the improvement caused by medication and the visits (*see* Tr. 386, 388, 389, 392, 398, 402, 404, 459-60, 486, 495). Thus, Plaintiff meets the ongoing treatment that diminishes symptoms and signs requirement.

Based on the previous analysis, the primary contention for paragraph "C" is whether Plaintiff has "marginal adjustment." As already noted, Plaintiff is able to dress himself, feed himself and his son, care for his pet cats, drive his son to school, draw, play cards and solitaire, watch tv, pick up his son from school, sometimes makes dinner for his family, and he can go shopping in stores (Tr. 224, 236-37). Plaintiff is able to do this all independently while his spouse is working (Tr. 20, 51-52). Plaintiff also enjoys his door-to-door religious work even if it gives him some anxiety, has "family dinners about 2 times per month[,]" and Plaintiff "go[es] to religious services 2 times per week" (Tr. 237; 244, 501). All of these are not supportive to the notion that Plaintiff possesses the minimal capacity to adapt.

Plaintiff cites several notations and records in which Plaintiff became "agitated" or had exacerbations of his mental disorders as a result of social interactions (DN 16-1 PageID 618-21) (citing Tr. 390, 394, 410, 413-15, 419, 458-59, 476-77, 489-90, 492, 501, 508, 523). While these instances show times when Plaintiff experienced the full brunt of his schizoaffective disorder, his actions as a whole, as shown throughout the record, show his ability to adapt. In one of his visits after being discharged from the crisis stabilization unit, Plaintiff explained that his medication was working well, and his ideations are "totally resolved" (Tr. 459). Further, Plaintiff was feeling even better by being fully compliant with his medication regime, as he has acknowledged the effects of noncompliance (Tr. 235, 458-59, 486, 495, 505-06). Additionally, when Plaintiff was being paranoid about others, he voluntarily chose to get ride of all his firearms when his wife asked

(Tr. 490). Finally, when confronted with a singular instance of homicidal ideations, Plaintiff and his counselor immediately created a "crisis plan" and discussed coping strategies (Tr. 417).

Thus, as Plaintiff still regains more than a minimal ability to adapt to change in the environment or to demands that are not already in his daily life, Plaintiff has not satisfied the paragraph "C" criteria of Listings 12.03 and 12.04.

Therefore, Plaintiff's arguments are unpersuasive as to each paragraph criteria of Listings 12.03 and 12.04. Thus, the ALJ's determination that Plaintiff does not meet or medically equal Listings 12.03 and 12.04 is supported by substantial evidence. As such, Plaintiff is not entitled to relief under this challenge.

Challenge to the Weighing of Medical Opinions

1. Arguments of the Parties

Plaintiff contends "[t]he ALJ failed to rely on substantial evidence when dismissing the medical opinions of [Plaintiff's] treating providers" (DN 16-1 PageID 622). Plaintiff argues that the ALJ "clearly erred by giving little weight to [Plaintiff's] treating psychiatrist[,]" while giving "some weight" to the non-treating state consultants (Id.). Instead, "[t]he opinion of a treating physician is entitled to more weight than the opinion of a non-treating physician" (Id.) (citing 20 C.F.R. § 404.1527; Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529-30 (6th Cir. 1996). When looking to the rationale provided by the ALJ, Plaintiff contends that "[t]he ALJ did not address the significant portion of Dr. Harrison's records that supported that [Plaintiff] was still experiencing hallucinations and struggling with paranoid thoughts and anxiety" (Id. at PageID 623) (citing Tr. 458-59, 489-90, 492, 508). Plaintiff's review of the evidence contains what he purports is sufficient evidence favoring a finding of disability (Id.). Further, Plaintiff asserts that "[a]n ALJ

cannot speculate and make independent medical findings[,]" nor may he "substitute his own medical judgment for that of the treating physician where the opinion of the treating physician is supported by the medical evidence" (Id. at PageID 624) (quoting Meece v. Barnhart, 192 Fed. App'x 456, 465 (6th Cir. 2006)). Thus, "the ALJ erred by speculating and making independent medical findings that contradicted the opinion of [Plaintiff's] treating psychiatrist[, and] Dr. Harrison clearly found support for the limitations he reported" (Id. at PageID 625).

Defendant disputes Plaintiff's argument by claiming that the ALJ properly comported with applicable law by only assigning controlling weight to treating medical sources that are consistent with the evidence (DN 21 PageID 655-57). When discussing the ALJ decision, Defendant recounts that the ALJ "explained that he assigned Dr. Harrison's opinion little weight because it was inconsistent with the evidence of the record as a whole, including Dr. Harrison's own progress notes[,]" and the ALJ instead "focused properly on the longitudinal evidence" (Id. at PageID 658). When looking to the evidence, "the ALJ reasoned that Plaintiff's mental status findings were largely in normal range other than fair insight and judgment in May, June and August, and did not support the degree of limitations stated by Dr. Harrison[,]" which demonstrates "adequate reasons for why [the ALJ] assigned little weight to the opinion of Dr. Harrison" (Id. at PageID 658-59). As for the state review psychologist, Defendant noted the ALJ's findings of greater social limitations based upon the evidence to reduce stress (Id. at PageID 659). Therefore, when considering the medical and non-medical evidence, Defendant contends that the ALJ properly assigned weight to the medical opinions and thus, properly detailed an RFC that is supported by substantial evidence (Id.).

2. Discussion

As previously discussed, the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence" and whether the correct legal standards were applied. *See* 42 U.S.C. § 405(g); Gayheart v. Comm'r of Soc. Sec., 710 F.3d 365, 374 (6th Cir. 2013); Cole v. Astrue, 661 F.3d 931, 937 (6th Cir. 2011)). As a result, the Court declines Plaintiff's invitation to apply the "clear error" standard.

As Plaintiff filed his applications prior to March 27, 2017, the rules in 20 C.F.R. §§ 404.1527 and 416.927 apply to the ALJ's assignment of weight to the medical opinions in the record. *See* 20 C.F.R §§ 404.1502(a)(1)-(8), 416.902(a)(1)-(8) (list of "acceptable medical sources"). The regulations require Administrative Law Judges to evaluate every medical opinion in the record. 20 C.F.R. §§ 404.1527(c); 416,927(c). The process of assigning weight to medical opinions in the record begins with a determination whether to assign controlling weight to the medical opinion of the treating source. 20 C.F.R. §§ 404.1527(c), 416.927(c). If controlling weight is not assigned to the treating source's opinion, the Administrative Law Judge must consider the factors in paragraphs (c)(1)-(6) of this section in deciding how much weight to accord each of the medical opinions in the record, including the medical opinion from the treating source. 20 C.F.R. §§ 404.1527(c), 416.927(c).

The Sixth Circuit has provided the following comprehensive explanation regarding the standards for weighing medical opinions:

> As a general matter, an opinion from a medical source who has examined a claimant is given more weight than that from a source who has not performed an examination (a "nonexamining source"), *id.* § 404.1502, 404.1527(c)(1), and an opinion from a medical source who regularly treats the claimant (a "treating source") is

afforded more weight than that from a source who has examined the claimant but does not have an ongoing treatment relationship (a "nontreating source"), *id.* § 404.1502, 404.1527(c)(2). In other words, "[t]he regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker." Soc. Sec. Rul. No. 96–6p, 1996 WL 374180, at *2 (Soc. Sec. Admin. July 2, 1996).

The source of the opinion therefore dictates the process by which the Commissioner accords it weight. Treating-source opinions must be given "controlling weight" if two conditions are met: (1) the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) the opinion "is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). If the Commissioner does not give a treating-source opinion controlling weight, then the opinion is weighed based on the length, frequency, nature, and extent of the treatment relationship, *id.*, as well as the treating source's area of specialty and the degree to which the opinion is consistent with the record as a whole and is supported by relevant evidence, *id.* § 404.1527(c)(2)-(6).

The Commissioner is required to provide "good reasons" for discounting the weight given to a treating-source opinion. *Id.* § 404.1527(c)(2). These reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. Rul. No. 96–2p, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996). This procedural requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir.2004).

On the other hand, opinions from nontreating and nonexamining sources are never assessed for "controlling weight." The Commissioner instead weighs these opinions based on the examining relationship (or lack thereof), specialization, consistency,

and supportability, but only if a treating-source opinion is not deemed controlling. 20 C.F.R. § 404.1527(c). Other factors "which tend to support or contradict the opinion" may be considered in assessing any type of medical opinion. *Id.* § 404.1527(c)(6).

Gayheart v. Comm'r of Soc. Sec., 710 F.3d 365, 375-76 (6th Cir. 2013).

The procedural requirements to assign weight to the opinion of a treating source and provide "good reasons" for that weight serves both to ensure adequacy of review and to give the claimant a better understanding of the disposition of his case. Cole v. Astrue, 661 F.3d 931, 939 (6th Cir. 2011) (citing Rogers v. Comm'r, 486 F.3d 234, 242 (6th Cir. 2007)). "These procedural requirements are 'not simply a formality' and are intended 'to safeguard the claimant's procedural rights.'" Cole, 661 F.3d at 937. The Sixth Circuit has indicated it will not hesitate to remand when it encounters decisions from Administrative Law Judges that do not comprehensively set forth the reasons for the weight assigned to a treating physician's opinion. Id. at 939 (citations omitted). However, a violation of these procedural requirements can be deemed "harmless error" if one of the following requirements is satisfied:

> (1) a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it; (2) if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion; or (3) where the Commissioner has met the goal of § 1527(d)(2) . . . even though she has not complied with the terms of the regulation.

Id. at 940 (citations omitted).

The regulations also provide that Administrative Law Judges "will consider" the medical findings of State agency medical or psychological consultants because they "are highly qualified and experts in Social Security disability evaluation." 20 C.F.R. §§ 404.1513a(b)(1),

416.913a(b)(1). When the opinion of a non-examining State Agency medical or psychological advisor is consistent with the record, the opinion represents substantial evidence to support the Administrative Law Judge's decision. *See* Atterbery v. Sec'y of Health & Human Servs., 871 F.2d 567, 570 (6th Cir. 1989); Hale v. Sec'y of Health & Human Servs., 816 F.2d 1078, 1082-83 (6th Cir. 1987) (per curiam).

Here, the ALJ explicitly considered the opinion of Dr. Harrison (Tr. 523-24) before assigning little weight (Tr. 27). This assignment was due to Dr. Harrison's "opinion and limitations [being] excessive given the treatment notes showing a very positive response to medication management and psychotherapy" (Id.). As previously mentioned, Dr. Harrison completed a questionnaire noting that Plaintiff had mild limitations in restriction of activities of daily living, marked limitations for difficulties in maintaining social functioning, marked limitation regarding difficulties in maintaining concentration, persistence, or pace, and four or more episodes of decompensation with each being of an extended duration (Tr. 524). The ALJ went on to mention a prior exacerbation of symptoms when Plaintiff began treatment with Dr. Harrison, but since then, Plaintiff "has improved with medication as long as he is compliant[, and] Dr. Harrison noted in April [2018] that [Plaintiff]'s schizoaffective disorder was in remission" (Tr. 27). Further, "[t]reatment notes also state [Plaintiff] is greatly improved" (Id.). "Mental status findings are largely in normal range other than fair insight and judgment in May, June and August, and do not support the degree of limitations" (Id.). Additionally, the ALJ also considered the nonexamining State agency determination, where the ALJ awarded "some weight" (Id.). More weight may have been awarded, but the ALJ found "greater social limitations given the

preponderance of evidence and in order to reduce stress" (Id.).  But Plaintiff's "positive response to treatment and his ongoing daily activities do not support any greater social limitations" (Id.).

Thus, while greater limitations were necessary in some respects, the nonexamining State agency determination was consistent with the record as a whole.  The ALJ also detailed the records which led to the decision not to award "controlling weight" to Dr. Harrison's opinion. Therefore, the ALJ's determination of weight to Dr. Harrison's opinion is supported by substantial evidence, and Plaintiff is not entitled to relief under this challenge.

### Challenge to the ALJ's Determination of Plaintiff's Symptoms

1. Arguments of the Parties

Plaintiff's third argument is encased within his final argument, and for clarity, the undersigned will separate them to consider in turn.  Plaintiff argues that the ALJ improperly considered the pain and other symptoms of Plaintiff's impairments, and this improper analysis led to an incorrect RFC determination (DN 16-1 PageID 626-629).  According to Plaintiff, "the ALJ erroneously concluded that the duration, severity, frequency, intensity, persistence, and limiting effects of [Plaintiff]'s pain symptoms were not consistent with medical records" (Id. at PageID 627).  Instead, "no reasonable person based on the evidence would find that [Plaintiff] could perform light work or any work for that matter" (Id.).  Further, Plaintiff supports this by arguing that "the ALJ did not adequately consider the reasons for [Plaintiff's] lack of aggressive treatment and supportive evidence of his pain" (Id.).  Looking to the medical history, Plaintiff's arthritis, degenerative disc disease, back pain, and hand injuries would, Plaintiff asserts, cause "difficulty gripping" and precludes "frequent bending" (Id. at PageID 628).  Plaintiff testified as such during the administrative hearing (Id.) (citing Tr. 44).

Defendant instead argues that "the ALJ's decision reflects her extensive assessment of the objective medical evidence, medical opinions, treatment history, side effect history (of which there was none), and evidence of daily activities in assessing Plaintiff's subjective complaints" (DN 21 PageID 659-60) (citing Tr. 20-28). Defendant goes on to claim that the ALJ found "the medical evidence fails to show that [Plaintiff's] pain is of the frequency and/or severity to preclude all work given Plaintiff's positive response to medication management without the need for more aggressive treatment such as physical therapy, chiropractic therapy, or pain management" (Id. at PageID 660). Further, "[t]he ALJ expressly took [Plaintiff's] finger injury into account, noting that the objective medical evidence in this case did not reflect any hand complaints or treatments for his hands other than a phalanx fracture of the right hand, which [Plaintiff] testified resolved after treatment" (Id. at PageID 660-61). As for the back pain, Plaintiff was seen, encouraged to seek chiropractic treatment, and later reported no pain (Id. at PageID 661). Thus, the ALJ "gave more than adequate explanation of her consideration of Plaintiff's subjective pain complaints" (Id. at PageID 662).

2. Discussion

In assessing a claimant's RFC, the Administrative Law Judge must necessarily consider the subjective allegations of the claimant and make findings. 20 C.F.R. §§ 404.1529, 416.929; SSR 16-3p. A claimant's statement that he is experiencing pain or other symptoms will not, taken alone, establish that he is disabled; there must be medical signs and laboratory findings which show the existence of a medical impairment that could reasonably be expected to give rise to the pain and/or other symptoms alleged. 20 C.F.R. §§ 404.1529(a), 416.929(a). In determining whether a claimant suffers from debilitating pain and/or other symptoms, the two-part test set forth

in <u>Duncan v. Sec'y of Health & Human Servs.</u>, 801 F.2d 847, 853 (6th Cir. 1986), applies. First, the Administrative Law Judge must examine whether there is objective medical evidence of an underlying medical condition. If there is, then the Administrative Law Judge must determine: "(1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such severity that it can reasonably be expected to produce the alleged disabling pain." <u>Id.</u> When, as in this case, the reported pain and/or other symptoms suggest an impairment of greater severity than can be shown by objective medical evidence, the Administrative Law Judge will consider other information which may be relevant to the degree of pain alleged. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

A plaintiff's level of daily activity is a factor which the Administrative Law Judge may consider in determining the extent to which pain is of disabling severity. 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i); <u>Bogle v. Sullivan</u>, 998 F.2d 342, 348 (6th Cir. 1993); <u>Blacha v. Sec'y of Health & Human Servs.</u>, 927 F.2d 228, 231 (6th Cir. 1990) (As a matter of law, the Administrative Law Judge may consider household and social activities in evaluating complaints of disabling pain.). Plaintiff's activities during the relevant time period involved door-to-door religious activities, going to religious services, completing household chores (vacuuming, dusting, mopping, etc.), watching television, reading, drawing, cooking, spending time with his family, playing cards and solitaire, and occasionally going shopping (Tr. 233-34, 236-37, 244, 501).

The frequency that plaintiff has sought treatment is a factor that may be considered in assessing his subjective complaints. 20 C.F.R. §§ 404.1529(c)(3)(v) and 416.929(c)(3)(v). Another factor that may be considered is whether there are "any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence

. . ." 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4).   Another factor that may be considered is the medication used to alleviate the alleged pain or other symptoms.   20 C.F.R. §§ 404.1529(c)(3)(iv), 416.929(c)(3)(iv).

In the ALJ's decision, the ALJ found that Plaintiff's "allegations of disabling pain and limitations since July 15, 2015, are not fully supported by the medical evidence of record, or of the severity to preclude all work prior to March 12, 2019" (Tr. 24).   Further, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however [Plaintiff]'s statements concerning the intensity, persistence and limiting effects of those symptoms are not entirely consistent with the medical evidence and other evidence in the record" (Tr. 26).   "Medical evidence fails to show that his pain is of the frequency and/or severity to preclude all work given his positive response to medication management without the need for more aggressive treatment" (Tr. 24).

When looking at the treatment records for the degenerative disc disease and back pain, the ALJ noted that Plaintiff "has some tenderness to palpation, but [retains] normal range of motion and no impairment in gait, station, or neurological functioning" (Id.).   Additionally, Plaintiff "has also mentioned activities such as moving heavy objects, unloading wood, and shoveling snow" (Id.).   Thus, Plaintiff "has a history of generalized back-related complaints, but his complaints are treated symptomatically with prescription medication" (Id.).   Looking at Plaintiff's hand injuries, the ALJ found that "the objective medical evidence in this case does not reflect any hand complaints or treatment for his hands other than a phalanx fracture of the right hand, which [Plaintiff] testified has resolved" (Tr. 24).   To further illustrate the point, the ALJ recounted that

Plaintiff "repeatedly states in the record that he enjoys drafting, which requires good fine manipulation" (Id.).

Plaintiff's assertion that periodic complaints of back pain would warrant the finding of a more stringent RFC is unfounded when faced with the longitudinal medical record. Specifically, Plaintiff relies upon an instance where he reported back pain after shoveling snow and received a Toradol injection (DN 16-1 PageID 628) (citing Tr. 471-73). However, the next visit, two weeks later, Plaintiff reported no pain at all, and his flare up was gone (Tr. 468). His later visits to Owensboro Health also yielded no complaints of back pain, even when discussing his mental and physical state (Tr. 458-61, 485-508). As for the claim that the crush injury to the right finger prevents "frequent bending" and created "difficulty gripping" (DN 16-1 PageID 629), Plaintiff has not presented any evidence that shows the ALJ did not consider Plaintiff's testimony at the administrative hearing, especially since the ALJ relied upon Plaintiff's testimony in other instances.

The ALJ's analysis went chronologically through all the information in the record to create a timeline regarding Plaintiff's care, and the ALJ explicitly discussed Plaintiff's claims of back and spine pain, hand injuries, and the resulting treatment (Tr. 20-24). The ALJ's decision cited the medical evidence to substantiate the determination, and Plaintiff has not shown evidence sufficient to warrant discarding the ALJ's decision. Therefore, the ALJ appropriately considered the pain and other symptoms present, and the ALJ's finding regarding Plaintiff's subjective pain complaints is supported by substantial evidence. Thus, Plaintiff is not entitled to relief under this challenge.

Challenge to the RFC Determination

1. Arguments of the Parties

Finally, Plaintiff's final claims are derived from the ALJ purportedly erring by finding an RFC of performing less than the full range of light work, in addition to the ALJ not issuing a GRID ruling (DN 16-1 PageID 625). Plaintiff's assertion is that "the ALJ should have limited [Plaintiff] to sedentary or less than sedentary work[,]" and the failure to find such a result was "clear error" (Id.). In support, Plaintiff argues that "no reasonable person based on the evidence would find that [Plaintiff] could perform light work or any work for that matter" as a result of "arthritis and degenerative disc disease in his back and trauma in his right finger from a crush injury" (Id. at PageID 627). Additionally, "the ALJ points to no specific reason that [Plaintiff's] RFC changed on March 12, 2019" (Id. at PageID 629). Instead, March 12 was, as Plaintiff puts it, an "arbitrary date" selected by the ALJ to declare disability (Id.). Further, Plaintiff insinuates that "the ALJ intentionally avoided a GRID ruling" and calls such a decision "highly suspect" (Id.).

Defendant, in turn, asserts that "the ALJ did not find arbitrarily that [Plaintiff's] RFC had changed as of March 12, 2019[,]" because "Plaintiff's age was construed as having changed" as Plaintiff was less than five months from changing age categories, and when considering the Medical-Vocational (GRID) Rules, the GRID would have directed a finding of "disabled" (DN 21 PageID 662). Defendant claims "that the ALJ construed this as a borderline age category case, and rather than applying the age categories mechanically and using Plaintiff's chronological age, found that the evidence supported Plaintiff as having turned 55 (and thus an individual of advanced age) as of March 12, 2019" (Id.) (citing 20 C.F.R. § 404.1563(a); Heston v. Comm'r of Soc. Sec., 245 F.3d 528, 535-36 (6th Cir. 2001)).

Turning to the Program Operations Manual System (POMS) DI 25501.410, Defendant states that "the most likely explanation for any date discrepancy is that the Administrative Law Judge completed the decision writing process on March 12, 2019 but that the decision was effectuated, mailed and dated seven days later on March 19, 2019, a date that is appropriate under Agency rules" (Id. at PageID 663). Even then, "Plaintiff has not demonstrated that any error was harmful here, given the [established onset date] was a mere seven days from the date the ALJ's decision actually issued, thus allowing his claim seven days before he was likely intended to have been found to have changed age category" (Id.). Finally, Defendant claims that "Plaintiff asks this Court to re-weigh the evidence relating to his impairments and decide the outcome of this case differently. This request is impermissible" (Id. at PageID 664). Thus, Defendant contends that the ALJ's decision was supported by substantial evidence (Id.).

2. Discussion

Like the previous two argument sections, the Court notes that it is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence" and whether the correct legal standards were applied. *See* 42 U.S.C. § 405(g); Gayheart v. Comm'r of Soc. Sec., 710 F.3d 365, 374 (6th Cir. 2013); Cole v. Astrue, 661 F.3d 931, 937 (6th Cir. 2011)). As a result, the Court declines Plaintiff's invitation to apply the "clear error" standard.

The RFC finding is an Administrative Law Judge's ultimate determination of what a claimant can still do despite her physical and mental limitations. 20 C.F.R. §§ 404.1545(a), 404.1546(c), 416.945(a), 416.946(c); Rudd v. Comm'r of Soc. Sec., 531 F. App'x 719, 728 (6th Cir. 2013) (the Commissioner is ultimately responsible for assessing a claimant's RFC). An

Administrative Law Judge makes this finding based on a consideration of medical opinions and all other evidence in the case record. 20 C.F.R. §§ 404.1529, 404.1545(a)(3), 404.1546(c), 416.929, 416.945(a), 416.946(c). Medical opinions expressing functional limitations imposed by a claimant's physical or mental impairments can be generated by treating physicians or psychologists, consultative examining physicians or psychologists, state agency physicians or psychologists who reviewed the claimant's medical records, or medical experts who testify at hearings before an Administrative Law Judge. 20 C.F.R. §§ 404.1502, 404.1513a(2), 404.1513a(b), 404.1527, 404.1545(a)(3), 416.902, 416.913a(2), 416.913a(b), 416.927, 416.945(a)(3). Thus, in making the RFC finding an Administrative Law Judge must necessarily assign weight to the medical source statements in the record and assess the claimant's subjective allegations. 20 C.F.R. §§ 404.1527(c), 404.1529(a), 416.927(c), 416.929(a).

At the fifth step, the Commissioner has the burden of demonstrating a significant number of jobs exist in the local, regional, and national economies that the claimant can perform, given his or her residual functional capacity, age, education, and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v) and (g), 416.920(a)(4)(v) and (g); Wyatt v. Sec'y of Health & Human Servs., 974 F.2d 680, 684 (6th Cir. 1992); Moon v. Sullivan, 923 F.2d 1175, 1181 (6th Cir. 1990); Allen v. Califano, 613 F.2d 139, 145 (6th Cir. 1980). The Commissioner may meet this burden by relying on expert vocational testimony received during the hearing to determine what jobs exist in significant numbers in the economy which plaintiff can perform considering the combination of his/her limitations. See Born v. Sec'y of Health & Human Servs., 923 F.2d 1168, 1174 (6th Cir. 1990); Davis v. Sec'y of Health & Human Servs., 915 F.2d 186, 189 (6th Cir. 1990); Varley v. Sec'y of Health & Human Servs., 820 F.2d 777, 779 (6th Cir. 1987). When the ALJ's

findings concerning a claimant's age, education, previous work experience, and RFC coincide with all of the criteria of a particular GRID Rule within the medical-vocational guidelines, the ALJ may rely on that GRID Rule to satisfy his burden. 20 C.F.R. §§ 404.1569, 416.969; GRID Rule 200.00; Born, 923 F.2d at 1174; Moon v. Sullivan, 923 F.2d 1175, 1181 (6th Cir. 1990). However, if the ALJ's findings do not coincide with all the criteria then the ALJ is limited to using the GRID Rule as a framework in the decision making process and must make a non-guideline determination based on the testimony of a vocational expert. 20 C.F.R. §§ 404.1566(e), 416.966(e); Born, 923 F.2d at 1174; Varley, 820 F.2d at 779; Kirk v. Sec'y of Health & Human Servs., 667 F.2d 524, 531, 535 (6th Cir. 1981), cert. denied, 461 U.S. 957 (1983).

Plaintiff's argument about the necessity to find a sedentary or less than sedentary RFC is based upon the prior argument that the ALJ improperly considered Plaintiff's pain and other symptoms (DN 16-1 PageID 626-29). However, since the undersigned has already determined that the ALJ appropriately considered the pain and other symptoms present, and the ALJ's finding regarding Plaintiff's subjective pain complaints is supported by substantial evidence (*see supra* pp. 32-33), the ALJ's RFC finding of light work with certain postural, environmental, and mental limitations is supported by substantial evidence. Plaintiff's argument is an alternative argument where a GRID ruling would direct a finding of disabled "*had [Plaintiff] been found capable of sedentary work*" (DN 16-1 PageID 629) (emphasis added). Since the ALJ's RFC determination is supported by substantial evidence, Plaintiff's argument is based upon an unfounded hypothetical. Therefore, Plaintiff is not entitled to relief under this portion of the challenge.

Next, the undersigned will consider the argument about use of the GRID rules. Here, the ALJ stated that while Plaintiff's birthday was four months away, the ALJ considered this situation to be one with borderline age categories, since the categories are not to be "mechanically applied" (Tr. 28) (citing 20 C.F.R. §§ 404.1563(a), 416.963(a)). While Plaintiff may crassly insinuate that the ALJ to "intentionally avoided" a GRID ruling and such a decision was "highly suspect," the ALJ followed the applicable regulations in using the GRID as a framework, which led to the ultimate conclusion: once Plaintiff's age category changed from closely approaching advanced age to advanced age, the GRID supports a "not disabled" finding for someone of Plaintiff's age, education, RFC, and past work experience (Tr. 28-29). *See also* 20 C.F.R. Pt. 404, Subpt. P, App. 2, Rule 202.13-202.15.

As for the date in which the ALJ rolled Plaintiff into the "advanced age" category, Plaintiff correctly states that the ALJ did not provide a reason for why March 12, 2019 was chosen. However, HALLEX I-2-2-42 states that "[i]f a claimant is within a few days to a few months of reaching an older age category . . . and using the higher age category would result in a determination of decision that the claimant is disabled, SSA will consider whether to use the higher age category after evaluating the overall impact of all the factors of the case." HALLEX I-2-2-42(A) (referencing 20 C.F.R. §§ 404.1563, 416.963). This situation applies to Plaintiff. On March 12, 2019, Plaintiff was four months from his 55th birthday, which would have placed him in the "advanced age" category (Tr. 28). Looking at the GRID rules as a framework, "closely approaching advanced age" led to a finding of "not disabled," while "advanced age" would lead to a finding of "disabled." 20 C.F.R. Pt. 404, Subpt. P, App. 2, Rule 202.04-202.15. When considering the "borderline age situation," the ALJ is only required to

explain that the situation was considered, whether they applied the higher age category or the chronological age, and the factors considered.  HALLEX I-2-2-42(C)(5).  The ALJ considered Plaintiff's age, his proximity to his birthday, his education, and Plaintiff's RFC (Tr. 28-30).  This comports with all the applicable regulations.

Additionally, Defendant's argument regarding the selected date is highly persuasive (DN 21 PageID 663).  As Defendant explained, "Plaintiff was last insured for benefits on December 31, 2020, which was after the date of the ALJ's decision.   In this case, the most likely explanation for any date discrepancy is that the Administrative Law Judge completed the decision writing process on March 12, 2019 but that the decision was effectuated, mailed and dated seven days later on March 19, 2019" (Id.) (internal citation omitted).  Defendant also correctly notes that "Plaintiff does not challenge the ALJ's decision not to apply the age categories mechanically" (Id. at PageID 664).

Therefore, the ALJ's determination to select March 12, 2019, as the date for which Plaintiff would be considered to transition into the new age category is supported by substantial evidence. As a result, Plaintiff's challenge to the ALJ's use of the GRID rules and for a sedentary RFC are unpersuasive, and the ALJ's determinations are supported by substantial evidence.   Therefore, Plaintiff is not entitled to relief under his challenges.

## Conclusion

As the Court noted previously, "[a]s long as substantial evidence supports the Commissioner's decision, we must defer to it, even if there is substantial evidence in the record that would have supported an opposite conclusion."   Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004).  Regardless of how this Court may view the evidence, it is not this

Court's place to re-try or re-evaluate the findings of the ALJ.  42 U.S.C. § 405(g).  Rather, this Court is only to find if substantial evidence exists to support the ALJ's decision and if the ALJ followed the applicable law.  (Id.).  After reviewing the record, the Court concludes that the ALJ's determination is supported by substantial evidence in the record and correctly followed the applicable law.  Therefore, Plaintiff is not entitled to relief with regard to his challenge.

<u>ORDER</u>

**IT IS HEREBY ORDERED** that the final decision of the Commissioner is **AFFIRMED**.

**IT IS FURTHER ORDERED** that judgment is **GRANTED** for the Commissioner.

H. Brent Brennenstuhl
United States Magistrate Judge

July 6, 2021

Copies:        Counsel of Record